Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| TIDAL BASIN CARIBE, LLC<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO; DEPARTMENTO DE LA VIVIENDA DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>INNOVATIVE EMERGENCY MANAGEMENT, INC.; TETRA TECH, INC.; CUSTOM GROUP, LLC<br><br>Proponentes-Seleccionados<br><br>BMA GROUP, PLEXOS GROUP, LLC, FAMILY ENDEAVORS, INC., CSA ARCHITECTS & ENGINEERS, LLP<br><br>Proponentes | KLRA202400099 | *REVISION ADMINISTRATIVA* procedente de la Junta de Subastas del Departamento de la Vivienda de Puerto Rico<br><br>Sobre: Impugnación de Adjudicación de Subasta sobre Requerimiento de Propuestas No. CDBG-DRMIT-RFP-2023-05, "Program Management Services related to the CEWRI-HH and CEWRI-DR" |

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 24 de mayo de 2024.

Comparece ante nos la parte recurrente, Tidal Basin Caribe, LLC, y nos solicita la revisión y revocación del Aviso de Adjudicación (*Notice of Award*) notificada por el Departamento de la Vivienda de Puerto Rico el 6 de febrero de 2024. Mediante el mismo, el referido organismo notificó la adjudicación del requerimiento de propuestas a favor de Innovative Emergency Management, Inc. y Tetra Tech, Inc.

Junto a su recurso, la parte recurrente presentó una *Moción Urgente en Auxilio de Jurisdicción,* la cual declaramos Ha Lugar mediante *Resolución* del 27 de febrero de 2024.

Número Identificador

SEN2024 _____

Por los fundamentos que expondremos a continuación, se deja sin efecto la paralización de los procedimientos y se desestima el presente recurso por falta de jurisdicción.

I

El 29 de agosto de 2023, el Departamento de la Vivienda de Puerto Rico (Departamento de la Vivienda o recurrido) publicó un *Request for Proposals No. CDBG-DRMIT-RFP-2023-05* para el *Program Management Services under Community Development Block Grant – Disaster Recovery* (CDBG-DR) y el *Program and Community Development Block Grant Mitigation* (CDBG-MIT).[1] Conforme surge de los documentos de autos, la Junta de Subastas del Departamento de la Vivienda (Junta) recibió propuestas por BMA Group, Plexos Group, LLC, Tetra Tech, Inc., Innovative Emergency Management, Inc., Family Endeavors, Inc., dba Endeavors, CSA Architects & Engineers, LLP, Custom Group, LLC, Tidal Basin Caribe, LLC (recurrente), en calidad de proponentes.[2]

Evaluadas las propuestas, el 6 de febrero de 2024, la Junta emitió el *Notice of Award* que nos ocupa a favor de Innovative Emergency Management, Inc. y Tetra Tech, Inc.[3] Indicó que los detalles de los nombres, direcciones y la información de contacto de todos los proponentes que presentaron una propuesta en respuesta al *request for proposal* se encontraban en el Exhibit II (*Bid Board Resolution*), el cual, según indicó, formaba parte integral del *Notice of Award* recurrido. El contenido de la referida misiva, además de apercibir a las partes sobre el término correspondiente para solicitar revisión judicial de la decisión ante el Tribunal de Apelaciones, en lo pertinente, incluía lo siguiente:

The following proposers were deemed Not Qualified:

1. BMA Group (BMA) – The proposer was ranked as Not Qualified. BMA Group passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer to successfully perform the services required. The Proposer received a rating of Fair for the critical criteria of professional

---

[1] Apéndice del recurso, págs. 16-116.
[2] Apéndice del recurso, págs. 450-1129.
[3] Apéndice del recurso, págs. 3021-3028.

qualifications and specialized experience of the proposed key staff; and the quality of the proposed approach and its relevance to the services described in this RFP. For the important criterion of the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, BMA received a Fair rating as well. Given that BMA Group received two ratings of Fair in critical criteria, it was ranked as Not Qualified as instructed in the RFP.

2. Plexos Group[,] LLC (Plexos) was ranked as Not Qualified by the EC. The Proposer passed the submission requirements evaluation for this RFP. Plexos received a rating of Excellent for the critical criteria of the professional qualifications and experience of the Proposer to successfully perform the services required, and the quality of the proposed work approach and its relevance to the services requested. In the important criterion of the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Excellent as well. Regarding the critical criterion of the professional qualifications and specialized experience of the proposed key staff this Proposer obtained a rating of Fair. Having Plexos obtained a rating of Fair in a critical criterion, the EC ranked Plexos as Not Qualified.

3. Family Endeavors, Inc., dba Endeavors (Family Endeavors) – was ranked as Not Qualified. Family Endeavors passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Fair in the first criterion of professional qualifications and the experience of the proposer to successfully perform the services required, as well as for the second criterion of professional qualifications and specialized experience of the proposed key staff. In the third criterion of quality of the proposed approach and its relevance to the services described in this RFP Family Endeavors received a rating of Fair. For the fourth criterion of capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Good. Given that, Family Endeavors received ratings of Fair in all critical criteria, it was ranked as Not Qualified by the EC.

4. CSA Architects & Engineers, LLP (CSA) was ranked as Not Qualified. CSA passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer to successfully perform the services required. In the important criterion regarding the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Excellent. CSA received a rating of Fair in the critical criterion of professional qualifications and specialized experience of the proposed key staff. In the critical criterion of quality of the proposed approach and its relevance to the services described in this RFP, the Proposer received a rating of Good. For all the reasons above, having received a rating of Fair in one critical criterion, CSA was ranked as Not Qualified by the EC.

5. Tidal Basin Caribe[,] LLC (TBC) was ranked as Not Qualified. TBC passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer; and for the quality of the proposed approach and its relevance

to the services described in this RFP. For the fourth criterion regarding the capacity of the key staff and the ability to commit adequate time to effectively perform the services, the Proposer received rating of Good in this criterion. Regardless, the second criterion of professional qualifications and specialized experience of the proposed key staff TBC received a rating of Fair. Therefore, the EC ranked TBC as Not Qualified.

The following proposers were deemed Highly Qualified:

1. Innovative Emergency Management, Inc. (IEM) was ranked as Highly Qualified. IEM passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer to successfully perform the services required, as well as in the second criterion of professional qualifications and specialized experience of the proposed key staff. In the third criterion of quality of the proposed approach and its relevance to the services described in this RFP, IEM also received a rating of Excellent. For the important criterion of capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Excellent.

   In terms of the Section 3 Business concern and MBE/WBE, IEM didn't submit evidence accreditive of been a Section 3 business but did present evidence of been a MWBE enterprise. Hence, MWBE preference was given by the EC. Therefore, the EC ranked IEM as Highly Qualified.

2. Tetra Tech, Inc[.] (Tetra Tech) was ranked as Highly Qualified. The Proposer passed the submission requirements evaluation for this RFP. Tetra Tech received a rating of Excellent for the critical criteria of the professional qualifications and experience of the Proposer to successfully perform the services required, and for the important criterion regarding the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe. Regarding the critical criteria of the professional qualifications and specialized experience of the proposed key staff and the quality of the proposed approach and its relevance to the services, this Proposer obtained a rating of Good.

   In terms of the Section 3 Business concern and MBE/WBE, Tetra Tech did not submitted *[sic]* the documentation required, consequently, it was not conceded any preference to this proposer. For all the reasons above, and as per section 10.3.3 of the RFP Tetra Tech was ranked as Highly Qualified.

3. Custom Group, LLC (Custom Group) was ranked as Highly Qualified. The Proposer passed the submission requirements evaluation for this RFP. As a result of the evaluation completed by the EC, the Proposer received a rating of Excellent for the critical criterion of quality of the proposed approach and its relevance to the services described in this RFP. For the important criterion of capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, Custom Group received a rating of Excellent as well. Custom Group received a rating of Good in the critical criterion of professional qualifications and specialized experience of the proposed key staff. Lastly, Custom received a rating of Good for the critical criterion of professional qualifications and experience of the Proposer to successfully perform the services required.

   In terms of the Section 3 Business concern and MBE/WBE, Custom Group didn't submit evidence accreditive of been a

> Section 3 or WBE business. However, the Proposer did present evidence accreditive of been an MBE enterprise, hence, MBE preference was given by the EC. Given all of the above, Custom Group was considered as Highly Qualified as identified in the RFP.
>
> […].[4]

La Junta expresó que la adjudicación se otorgó a los proponentes responsables, cuyos enfoques técnicos del proyecto, calificaciones, precios, entre otros factores considerados, resultaron en el más ventajoso para el Departamento de la Vivienda, siempre y cuando el costo sea razonable según los métodos identificados en el Manual de Adquisiciones para los Programas CDBG-DR, CDBG-MIT y CDBG Estatal, Reglamento Núm. 9506 de 25 de septiembre de 2023.

Inconforme, el 26 de febrero de 2024, la parte recurrente compareció ante nos mediante el presente recurso de revisión judicial. En el mismo, propuso los siguientes señalamientos de error:

> Vivienda y su Junta de Subastas violaron el debido proceso de ley de Tidal Basin, y de las demás compañías licitadoras no agraciadas, al no proveerles un procedimiento administrativo de revisión de la determinación de la Junta de Subastas y prohibirles, *de facto*, el remedio de reconsideración para la adjudicación del RFP recurrido.
>
> Erró y abusó de su discreción Vivienda y su Junta de Subastas al no permitirle a la peticionaria acceso a la totalidad del expediente administrativo, actuación constitutiva de una violación al debido proceso de ley a su derecho de acceso a la información que impacta adversamente su derecho a una adecuada revisión judicial.
>
> Erró y abusó de su discreción la Junta de Subastas y Vivienda al descalificar a Tidal Basin por entender que el personal clave ("Key Staff") propuesto por [e]sta no cumplía con el requisito de cualificaciones profesionales y conocimiento especializado establecido en el RFP-2023-05.
>
> > (i) Erró y abusó de su discreción Vivienda y la Junta de Subastas al utilizar un procedimiento de evaluación de propuestas ambiguo, impreciso, ininteligible y que no guardó relación con lo anticipado en el RFP[-]2023-05.
>
> Erró y abusó de su discreción Vivienda y su Junta de Subastas al no seleccionar al licitador que m[á]s cercano estuvo al costo estimado independiente (ICE), Tidal Basin, según fue establecido por la propia Junta de Subastas.

---

[4] Apéndice del recurso, págs. 3022-3025. (Énfasis omitido).

Junto a su recurso, la parte recurrente presentó una *Moción Urgente en Auxilio de Jurisdicción,* la cual declaramos Ha Lugar mediante *Resolución* del 27 de febrero de 2024.

Por otro lado, mediante el referido dictamen, le concedimos un término a la parte recurrida para que mostrara causa por la cual no debíamos desestimar el recurso por falta de jurisdicción por notificación defectuosa.

En cumplimiento con la referida *Resolución*, y luego de una prórroga a esos efectos, el 25 de marzo de 2024, la parte recurrida compareció mediante *Moción para Mostrar Causa por la que no se debe Desestimar el Recurso por Falta de Jurisdicción y Otros Extremos*. En síntesis, argumentó que, por virtud del Acuerdo de Subversión entre el Departamento de la Vivienda y el Departamento de Vivienda y Desarrollo Urbano de los Estados Unidos (HUD), la ley federal regulaba exclusivamente los Programas CDBG-DR, CDBG-MIT y CDBG Estatal. Arguyó que, por tanto, la Administración de Servicios Generales estableció, mediante la Determinación Administrativa 2021-01, excluir a dichos programas del sistema de compras gubernamental centralizado creado por la *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, Ley Núm. 73-2019, según enmendada, 3 LPRA sec. 9831 *et seq*. (Ley Núm. 73-2019), toda vez que las obligaciones asumidas en virtud de los Acuerdos de Subversión tenían prioridad sobre las disposiciones de las leyes estatales. Alegó que la Junta CDBG, creada en virtud del Manual de Adquisiciones para el Programa CDBG-DR, Reglamento Núm. 9205 de 4 de agosto de 2020, derogado por el Manual de Adquisiciones para los Programas CDBG-DR, CDBG-MIT y CDBG Estatal, *supra*, era el ente responsable de adjudicar los procesos formales de compras y servicios para los programas subvencionados con dichos fondos y sus determinaciones no estaban sujetas a la revisión de la Junta Revisora de Subastas de la Administración de Servicios Generales.

Por otro lado, la parte recurrida planteó que, el 12 de febrero de 2024, la Asamblea Legislativa de Puerto Rico enmendó la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.* (LPAU), mediante la Ley Núm. 48-2024 para eliminar el recurso de reconsideración y establecer la revisión administrativa ante la Junta Revisora de la Administración de Servicios Generales como el único mecanismo para atender las impugnaciones de las subastas. Indicó que, a partir de la disolución de la Junta Revisora de Subastas de Vivienda y de la exclusión de la aplicabilidad de la Ley Núm. 73-2019, *supra*, a los procesos de bienes del programa CDBG-DR, CDBG-MIT y CDBG Estatal, no existe un ente administrativo con autoridad de ley para revisar las adjudicaciones de la Junta CDBG, por lo que la parte adversamente afectada por una decisión de la Junta CDBG no puede recurrir a la Junta Revisora de Subastas de Vivienda ni a la Junta Revisora de la Administración de Servicios Generales. Sin embargo, arguyó que las partes adversamente afectadas por una determinación de la Junta CDBG, conservan su derecho de presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, lo cual fue correctamente advertido en la adjudicación objeto de la presente revisión judicial. En vista de ello, sostuvo que la notificación fue adecuada y que, por consiguiente, esta Curia tenía jurisdicción para evaluar los méritos del recurso.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

**II**

**A**

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *R&B Power, Inc. v. Junta de Subastas de la Administración de Servicios Generales de Puerto Rico*, 2024 TSPR 24, resuelto el 13 de marzo de 2024; *FCPR v. ELA et al.*, 211 DPR 521 (2023); *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384 (2022). Es por ello que,

la falta de jurisdicción de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 386 (2020). Por tal razón, es norma reiterada que los tribunales son celosos guardianes de su jurisdicción y que tienen el deber ineludible de auscultar dicho asunto con preferencia a cualesquiera otros. *R&B Power, Inc. v. Junta de Subastas de la Administración de Servicios Generales de Puerto Rico*, supra; *Pueblo v. Torres Medina*, 211 DPR 950 (2023).

De ese modo, la ausencia de jurisdicción trae varias consecuencias, tales como: (1) que no sea susceptible de ser subsanada; (2) las partes no puedan conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) obliga a los tribunales apelativos a examinar la jurisdicción del foro de donde procede el recurso; y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*. *Allied Mgmt. Group v. Oriental Bank*, supra.

En ese sentido, en reiteradas ocasiones el Tribunal Supremo de Puerto Rico ha expresado que los tribunales tenemos el deber de proteger nuestra jurisdicción sin poseer discreción para asumirla donde no la hay. *Pueblo v. Ríos Nieves*, 209 DPR 264 (2022). Por tanto, si un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia. *R&B Power, Inc. v. Junta de Subastas de la Administración de Servicios Generales de Puerto Rico*, supra; *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014). A esos efectos, las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia. *Pueblo v. Ríos Nieves*, supra; *FCPR v. ELA et al.*, supra.

**B**

El Tribunal Supremo de Puerto Rico ha reiterado la importancia que reviste para la buena marcha de la cosa pública, que los procesos de

adquisición de bienes y servicios del gobierno se lleven a cabo con eficiencia, honestidad y completa probidad. *R & B Power v. E.L.A.*, 170 DPR 606, 619 (2007); *Empresas Toledo v. Junta de Subastas*, 168 DPR 771 (2006); *A.E.E. v. Maxon*, 163 DPR 434 (2004). De ordinario, en la adquisición competitiva de bienes y servicios por el gobierno central y municipal, se utiliza el mecanismo de la subasta pública formal o tradicional. *Íd.*; *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525, 531 (2019). Asimismo, el *request for proposal* o requerimiento de propuestas es otro mecanismo disponible para que el gobierno adquiera bienes y servicios, caracterizado por su apertura a negociaciones y por ser un procedimiento informal y flexible. *Íd.* Por medio de ambos mecanismos se protegen los intereses del gobierno, toda vez que procuran conseguir los precios más económicos, evitan el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento. *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 531, citando a *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 994 (2009). En ese sentido, nuestro más Alto Foro ha expresado que, en la medida que haya pureza en estos procedimientos, los entes estatales y municipales promoverán la libre competencia entre los postores. *Íd.*

De ordinario, se recurre al mecanismo excepcional de *request for proposal*, mediante la solicitud de propuestas selladas, cuando se trata sobre la adquisición de bienes o servicios especializados que involucran aspectos altamente técnicos y complejos o cuando existen escasos competidores cualificados. *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 532; *CD Builders v. Mun. Las Piedras,* 196 DPR 336, 345 (2016); *R & B Power v. E.L.A.*, supra, págs. 621-622. Debido a su naturaleza informal y flexible, y la erogación de fondos públicos que implica, se exige que la utilización del *request for proposal* "no se convierta en la norma como un escape a la competencia secreta de la subasta tradicional". *Íd.* Sobre ese

particular, en *R & B Power v. E.L.A.*, supra, pág. 625, nuestro más Alto Foro

expresó que:

> Este mecanismo excepcional no puede convertirse en la norma y así servir de subterfugio para que los entes gubernamentales soslayen el mecanismo tradicional de adquisición competitiva de bienes y servicios. Somos conscientes de la necesidad de proveerle al Gobierno y sus agencias mecanismos de mayor flexibilidad en el manejo de la cosa pública para poder atender con prontitud y eficazmente los problemas que aquejan a la ciudadanía. Esa flexibilidad, sin embargo, no puede convertirse en patente de corso para el dispendio de fondos públicos. Le corresponderá a la Junta en el descargo de su responsabilidad fiduciaria asegurarse que ello sea así. Como siempre, será responsabilidad de los tribunales velar por que las agencias y las corporaciones públicas no se conviertan en autócratas en el ejercicio de la facultad extraordinaria concedida, actuando sin parámetros adecuados y exentos de supervisión alguna.

Aun cuando la subasta formal y el *request for proposal* son mecanismos distintos, nuestro Tribunal Supremo ha reconocido que un requerimiento de propuestas participa de características adjudicativas de la misma forma que la subasta tradicional. *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 532, citando a *R & B Power v. E.L.A.*, supra, pág. 624. Por ejemplo, el Foro revisor de última instancia ha establecido que del *request for proposal* debe surgir los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta. *Íd.* En vista de ello, son de clara aplicación los principios generales establecidos en la Sección 3.16 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9656 (LPAU), que exige que cuando la agencia concluye un procedimiento adjudicativo en un caso particular, notificará por escrito por correo ordinario o electrónico a las partes su determinación, los fundamentos para la misma y el recurso de revisión disponible. *R & B Power v. E.L.A.*, supra, pág. 624; *Velázquez v. Adm. de Terrenos*, 153 DPR 548 (2001). Por tal razón, los oferentes o participantes de un *request for proposal* pueden cuestionar, mediante revisión judicial, la adjudicación de una propuesta de subasta. *PR Eco Park et al. v. Mun. de Yauco,* supra, págs. 532-533. Ello aplica aun cuando el documento mismo

de licitación nada disponga respecto al derecho de revisión judicial, pues el *request for proposal* no está exento de revisión judicial, aunque la legislación no lo disponga expresamente. *Íd.*, págs. 533; *R & B Power v. E.L.A.*, supra, pág. 624.

Tanto las subastas tradicionales como los requerimientos de propuestas que adjudique una entidad gubernamental están regidos por las disposiciones de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.* (LPAU), y, en lo aquí atinente, por los términos del Manual de Adquisiciones para los Programas CDBG-DR, CDBG-MIT y CDBG Estatal, Reglamento Núm. 9506 de 25 de septiembre de 2023 (Reglamento Núm. 9506). En particular, la Sección 4.2 de la LPAU, 3 LPRA sec. 2172, dispone, en lo pertinente, lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo. Disponiéndose, que[,] si a la fecha del archivo en autos de copia de la notificación de la orden o resolución final de la agencia o del organismo administrativo apelativo correspondiente es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.

> [...].

A tenor con ello, el Reglamento Núm. 9506, *supra,* establece que toda adjudicación deberá ser notificada a todos los ofertantes no agraciados por correo electrónico o correo certificado en o antes del siguiente día laboral de haberse recibido la comunicación de la Junta de Subastas. Artículo V, Sección 5.4 y 5.5 del Reglamento Núm. 9506. De igual forma, a los fines de que una notificación de adjudicación de requerimiento de propuestas goce de eficacia jurídica, la misma deberá apercibir a las partes de lo siguiente: (1) Fecha de la notificación;

(2) Resolución de la Junta de Subasta; (3) Nombre y dirección de todos los ofertantes; (4) Número de la subasta o del *request for proposal*; (5) Resumen de la oferta; (6) Factores o criterios considerados para adjudicar la oferta; (7) El nombre de cada ofertante con indicación de las partidas adjudicados a su favor y el motivo de rechazo de las partidas no adjudicadas; (8) Defectos, si alguno, de las propuestas de los ofertantes no agraciados; (9) Derecho a presentar un recurso de revisión judicial de conformidad con la Sección 4.2 de LPAU, 3 LPRA sec. 9672, así como la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24 *et seq.* Artículo V, Sección 5.6 del Reglamento Núm. 9506.

El precitado Reglamento añade, a su vez, que en el aviso de adjudicación habrá de figurar la siguiente información al ofertante agraciado: (1) Documentos necesarios para la ejecución del contrato; (2) El plazo asignado para presentar la documentación requerida y; (3) Una advertencia de que la adjudicación no es vinculante hasta que se ejecute el contrato. Artículo V, Sección 5.7 del Reglamento Núm. 9506.

Por otro lado, la Sección 3.19 de la LPAU, 3 LPRA sec. 2165, en lo referente a las reconsideraciones presentadas ante las agencias administrativas, disponía lo siguiente:

[…]

La parte adversamente afectada por una decisión podrá presentar una moción de reconsideración ante la Administración de Servicios Generales o ante la entidad gubernamental correspondiente, según sea el caso, dentro del término de diez (10) días desde la fecha de la notificación de la adjudicación de la subasta o propuesta. La Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, deberá considerar la moción de reconsideración dentro de los diez (10) días laborables de haberse presentado. Si se tomare alguna determinación en su consideración, el término para instar el recurso de revisión judicial empezará a contarse desde la fecha en que se archive en autos, copia de la notificación de la decisión de la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, resolviendo la moción de reconsideración. Si la fecha de archivo en autos de copia de la notificación de la orden o resolución es distinta a la del depósito en el correo ordinario o del envío por medio electrónico de dicha notificación, el término se calculará a partir de la fecha del

depósito en el correo ordinario o del envío por medio electrónico, según corresponda. Si la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los diez (10) días de haberse presentado, se entenderá que esta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial.

Si la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, acoge la solicitud de reconsideración dentro del término provisto para ello, deberá emitir la resolución en reconsideración dentro de los treinta (30) días siguientes a la radicación de la moción de reconsideración. Si la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, acoge la moción de reconsideración, pero dejase de tomar alguna acción con relación a la moción dentro de los treinta (30) días de esta haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de treinta (30) días. La Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, podrá extender dicho término una sola vez, antes de que este culmine, por un término adicional de quince (15) días.

[…]

Recientemente, el 19 de febrero de 2024, la precitada Sección fue enmendada por la Ley Núm. 48-2024, a los fines de aclarar que el mecanismo disponible para impugnar las determinaciones de la Junta de Subastas será la revisión administrativa y que la Junta Revisora de la Administración de Servicios Generales es el único organismo para impugnar las determinaciones de la Junta de Subastas y presentar el recurso de revisión administrativa. Exposición de motivos de la Ley Núm. 48-2024. A su vez, mediante el citado estatuto se reconoce el recurso de revisión administrativa como el único recurso para impugnar las adjudicaciones en los procesos de licitación pública regulados por la Ley Núm. 73-2019, *supra*, y dispone que su presentación es un requisito jurisdiccional antes de presentar un recurso de revisión judicial. *Íd.* La Asamblea Legislativa expresó que, al instituir el recurso de revisión administrativa ante la Junta Revisora como el único mecanismo de impugnación de las adjudicaciones, se da uniformidad y certeza al proceso. *Íd.* Asimismo, la rama legislativa particularizó que, al establecer el recurso de revisión administrativa como un requisito jurisdiccional para presentar

un recurso de revisión judicial, se garantiza que las partes tengan la oportunidad de acudir a un organismo especializado para corregir cualquier error sin la necesidad de incurrir en los costos que conlleva la presentación de un recurso de revisión judicial y esperar el tiempo que conlleva la adjudicación de un recurso en el Tribunal de Apelaciones. *Íd.* En virtud de ello, la nueva Sección 3.19 de la LPAU, *supra*, lee como sigue:

[…]

La parte adversamente afectada por una determinación en un proceso de licitación pública podrá presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales dentro del término de diez (10) días laborables, contados a partir del depósito en el correo federal o la notificación por correo electrónico, lo que ocurra primero, de la adjudicación del proceso de licitación pública. La Junta Revisora de Subastas de la Administración de Servicios Generales deberá determinar si acoge o no la solicitud de revisión administrativa, dentro del término de diez (10) días laborables de haberse presentado la solicitud de revisión administrativa. Si dentro de ese término, la Junta Revisora de la Administración de Servicios Generales determina acoger la misma, tendrá un término de treinta (30) días calendario adicionales para adjudicarla, contados a partir del vencimiento de los diez (10) días laborables que tenía para determinar si la acogía o no. La Junta Revisora de la Administración de Servicios Generales podrá extender el término de treinta (30) días calendario, una sola vez, por un término adicional de quince (15) días laborables.

Si se tomare alguna determinación en la revisión administrativa, el término para instar el recurso de revisión judicial ante el Tribunal de Apelaciones comenzará a contarse desde la fecha en que se depositó en el correo federal o se notificó por correo electrónico, lo que ocurra primero, copia de la notificación de la decisión de la Junta Revisora de Subastas de la Administración de Servicios Generales adjudicando la solicitud de revisión administrativa. Si la Junta Revisora de Subastas de la Administración de Servicios Generales dejare de tomar alguna acción con relación al recurso de revisión administrativa, dentro de los términos dispuestos en esta Ley, se entenderá que este ha sido rechazado de plano, y a partir de esa fecha comenzará a decursar el término para presentar el recurso de revisión judicial. La presentación del recurso de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales será un requisito jurisdiccional antes de presentar un recurso de revisión judicial ante el Tribunal de Apelaciones.

La parte adversamente afectada tendrá un término jurisdiccional de treinta (30) días calendario para presentar un recurso de revisión judicial ante el Tribunal de Apelaciones, contados a partir del depósito en el correo federal o de remitida la determinación por correo electrónico, lo que ocurra primero, ya sea de la adjudicación de la solicitud de revisión administrativa ante la Junta Revisora de Subastas de la

Administración de Servicios Generales, o cuando venza el término que tenía la Junta Revisora de Subastas de la Administración de Servicios Generales para determinar si acogía o no la solicitud de revisión administrativa.

[…]

El cumplimiento de las formalidades antes indicadas es de carácter jurisdiccional, por lo que la eficacia de la notificación de adjudicación de subasta o del requerimiento de propuestas quedará supeditada a la fiel concurrencia de estas. *PR Eco Park et al. v. Mun. de Yauco,* supra. Las referidas exigencias responden a que, el derecho de cuestionar una subasta o un requerimiento de propuestas adjudicado mediante un recurso de revisión judicial es parte del debido proceso de ley, razón por la cual se hace indispensable una notificación adecuada. *Íd.* "S[o]lo a partir de la notificación así requerida es que comenzará a transcurrir el término para acudir en revisión judicial". *PVH Motor v. ASG*, 209 DPR 122, 132 (2022), citando a *IM Winner, Inc. v. Mun. de Guayanilla*, 151 DPR 30, 38 (2000). Lo anterior tiene el efecto de que el recurso que se presente ante un tribunal de mayor jerarquía sea prematuro. *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 538. Así pues, ante una notificación defectuosa, se priva a este Foro de jurisdicción para entender sobre el asunto impugnado. *PVH Motor v. ASG*, supra. De otro lado, hasta tanto no discurra el referido término, el licitador u oferente no podrá formalizar el contrato con la entidad gubernamental. *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 538.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte recurrente sostiene que la Junta violentó el debido proceso de ley al no proveerle un procedimiento administrativo de revisión de la determinación de la Junta de Subastas y prohibirles el remedio de reconsideración para la adjudicación del *request for proposal* en cuestión. Plantea, además, que el referido organismo administrativo erró al no permitirle acceso a la totalidad del expediente administrativo, lo cual impacta adversamente su derecho a una adecuada revisión judicial. Por

otro lado, arguye que la agencia recurrida incidió al descalificarla por entender que el personal clave propuesto por esta no cumplía con el requisito de cualificaciones profesionales y conocimiento especializado establecido en el *request for proposal*. Argumenta que la parte recurrida erró y abusó de su discreción al utilizar un procedimiento de evaluación de propuestas ambiguo, impreciso, ininteligible y que no guardó relación con lo anticipado en el *request for proposal*. Alega que la agencia administrativa incidió al no seleccionar al licitador que más cercano estuvo al costo estimado independiente, según fue establecido por la propia agencia.

Luego de evaluar sosegadamente el contenido de la notificación impugnada, colegimos que, tal cual lo propuesto por la parte recurrente, no concurren las exigencias reconocidas por nuestro ordenamiento jurídico para legitimar su oponibilidad. Ciertamente, la ausencia total de expresión relativa al derecho a reconsideración consagrado en la Sección 3.19 de la LPAU, *supra*, así como el derecho a una revisión administrativa ante la Junta Revisora de la Administración de Servicios Generales, constituyen un defecto de carácter sustantivo que priva a la parte recurrente de cuestionar la corrección del quehacer administrativo ejercido. Igualmente, ello incide sobre la facultad que le asiste a este Foro para ejercer sus funciones de revisión a cabalidad. Cabe destacar que, si bien la Sección 3.19 de la LPAU, *supra*, fue enmendada recientemente para eliminar el derecho a reconsideración, ello ocurrió con posterioridad a la emisión y notificación de la adjudicación que nos ocupa, por lo que este derecho debía ser advertido expresamente en dicho documento conforme exigía nuestro ordenamiento jurídico vigente en ese momento.

Por otro lado, según esbozamos, la parte recurrida alega en su *Moción para Mostrar Causa por la que no se debe Desestimar el Recurso por Falta de Jurisdicción y Otros Extremos* que, por virtud del Acuerdo de Subvención, la ley federal, *de facto*, desplazó la ley estatal y regula exclusivamente los Programas CDBG-DR, CDBG-MIT y CDBG Estatal. En apoyo a su contención, citó la Determinación Administrativa 2021-01

emitida, el 21 de mayo de 2021, por la Administración de Servicios Generales mediante la cual excluyó al Programa CDBG-DR-MIT de utilizar el sistema de compras gubernamental centralizado de la Ley Núm. 73-2019, *supra*, toda vez que las obligaciones asumidas en virtud de los Acuerdos de Subvención tenían prioridad sobre las disposiciones de las leyes estatales. Ahora bien, su argumentación carece de referencia a legislación alguna que expresamente ocupe el campo. Como bien expuso la parte peticionaria en su réplica, la parte recurrida no ofreció ningún fundamento legal en el cual el Congreso de los Estados Unidos hiciera una expresión inequívoca de suplantar el derecho administrativo que impera en nuestro ordenamiento jurídico estatal en cuanto a los remedios que se reconocen en casos como el presente. Es por ello que tal planteamiento no constituye justa causa.

Al examinar el contenido del *Notice of Award* en cuestión, concluimos que este es una notificación defectuosa, toda vez que carece de las siguientes exigencias: (1) Una síntesis o resumen de las propuestas sometidas por los ofertantes; (2) El nombre de cada ofertante con indicación de las partidas adjudicados a su favor y el motivo de rechazo de las partidas no adjudicadas; (3) Defectos, si alguno, de las propuestas de los ofertantes no agraciados; (4) Documentos de los ofertantes agraciados necesarios para la ejecución del contrato; (5) El plazo asignado para que los ofertantes agraciados presenten la documentación requerida y; (6) Una advertencia de que la adjudicación no es vinculante hasta que se ejecute el contrato.

En mérito de lo anterior, resolvemos que la Junta incumplió con los requisitos jurisdiccionales estatuidos para imprimir eficacia a su quehacer. La notificación de su determinación es una defectuosa e inadecuada. Siendo así, la deficiencia resuelta redunda en suprimir nuestra jurisdicción, hasta tanto se cuente con una notificación adecuada y conforme a ley. Consecuentemente, la Junta debe subsanar los defectos del *Notice of Award* para que comiencen a decursar los términos de ley disponibles para

que la parte recurrente, de entenderlo necesario, solicite la revisión judicial ante nos.

**IV**

Por los fundamentos que anteceden, dejamos sin efecto la paralización de los procedimientos y desestimamos el presente recurso de revisión judicial por falta de jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones